# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| CAMELLA WILLIAMS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-393-PRC |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Camella Williams on November 1, 2013, and a Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], filed on April 28, 2014. Plaintiff requests that the August 28, 2012 decision of the Administrative Law Judge denying her claims for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On July 23, 2014, the Commissioner filed a response, and Plaintiff filed a reply on August 18, 2014. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff Camella Williams claims she is unable to work due to a herniated disc, stage one breast cancer, asthma, depression, anxiety, a sleep disorder, and carpal tunnel syndrome. On September 27, 2010, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging an onset date of August 13, 2010. The applications were denied initially on January 12, 2011, and upon reconsideration on March 11, 2011. Plaintiff timely requested a hearing, which was held on July 10, 2012, before Administrative Law Judge ("ALJ") Mario G. Silva. In appearance were Plaintiff, her attorney, and a vocational expert. On August 28, 2012, the ALJ issued a written decision denying benefits based on these findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since August 13, 2010, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease, asthma, sleep disorder, right-sided carpal tunnel syndrome, depression, and anxiety-related disorder variously described as panic disorder with agoraphobia.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to walk no more than one hour and to stand no more than 10 minutes continuously. She requires the option to stand or sit as needed with the definitional parameters of the sedentary exertional level. The claimant can occasionally balance, stoop, or climb stairs or ramps, but can never kneel, crouch, or climb ladders, ropes, or scaffolds. The claimant is limited to frequent, but not constant fingering or handling of the right upper extremity, but has no limitations of the left upper extremity. The claimant must avoid concentrated exposure to extreme heat. The claimant must avoid even moderate exposure to poorly ventilated areas, environmental irritants such as fumes, odors, and gases, and hazards such as dangerous machinery and unprotected heights. In addition, the claimant is only able to understand, remember, and carry out simple instructions. She is able to make judgments on simple work-related decisions. She is able to respond to usual work situations and to changes in a routine work setting. She is able to interact appropriately with supervisors or co-workers in a routine work setting.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1963] and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

> finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 13, 2010, through the date of this decision.

(AR 15-21).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On November 1, 2013, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see*

4

*also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically

considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ (1) failed to properly assess Plaintiff's mental conditions, (2) did not properly weigh the treating physician opinion evidence, and (3) erred in the RFC determination by failing to accommodate Plaintiff's hand limitations, not analyzing Plaintiff's limited ability to bend, and not considering Plaintiff's need to elevate her legs.

### A. Mental Limitations

On January 3, 2011, Plaintiff was examined for the state agency by Roger Parks, Psy.D. Plaintiff reported depression for the previous two years with crying spells, staying in bed, low energy level, and a poor appetite. She also reported anxiety and panic attacks with shortness of

breath, chest pains, and sweating. (AR 606). She stated that she avoids going out in public because of her anxiety of crowds and that she does not like to be around other people. (AR 606, 608). She showered every two days and wore pajamas most days. Her teenage daughter helped with chores, laundry, and grocery shopping. Dr. Parks observed her to be mildly anxious during the interview and noted that she had "difficulty maintaining her concentration during the exam." (AR 607).

During Dr. Parks' examination, Plaintiff recalled two of three items after ten minutes, repeated four digits forward and two backward, solved two of three addition problems, correctly solved only one of three subtraction problems, and was unable to correctly solve any of the multiplication or division problems. Dr. Parks reported that Plaintiff did not understand how to perform serial sevens and could not perform serial threes from 30. Plaintiff gave an incorrect answer on judgment assessment and did not know the number of weeks in a year although she knew the number of seasons, the month of Labor Day, and the nation's capital. Dr. Parks concluded that Plaintiff had some difficulty comprehending instructions, which was demonstrated by her inability to understand the serial sevens task. He also opined that Plaintiff's concentration was poor as reflected in poor performance on the immediate recall task. Dr. Parks diagnosed Plaintiff with dysthymic disorder and panic disorder with agoraphobia, noting that her pschyosocial stressor was "crowds." (AR 608). He assessed a Global Assessment of Functioning of 60.

On January 12, 2011, H. Kladder, Ph.D. reviewed the file for the agency and opined that Plaintiff had medically determinable impairments of dysthymic disorder and panic disorder with agoraphobia. (AR 623, 654). He opined that Plaintiff had moderate limitations with the ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods. Dr. Kladder opined that, while Plaintiff had "some

7

limitation in concentration, it is expected she would be able to handle stresses involved in simple unskilled work." (AR 618). This opinion was affirmed by J.V. Corcoran, M.D. on March 10, 2011.

On March 25, 2011, Plaintiff presented to her treating physician, B. Spotwood, M.D. for follow up on neck pain and for an initial evaluation of panic attacks. Plaintiff reported being under stress because of her breast cancer and because she was not working due to her chronic back and shoulder pain. Plaintiff's psychiatric examination was normal, except that Dr. Spotwood noted that she "has genuine concern about not feeling her best and having a negative self image." Dr. Spotwood diagnosed Plaintiff with "anxiety state, unspecified," depression, chronic pain syndrome, and obesity. Dr. Spotwood prescribed medication for both depression and anxiety.

On May 11, 2011, Plaintiff saw Dr. Spotwood for a follow up on anxiety and depression. Plaintiff's psychiatric evaluation was normal, but she was positive for depression and anxious feelings. The diagnoses remained unchanged, and her medications for depression and anxiety were continued. On August 30, 2011, Plaintiff reported that she continued to have bouts of anxiety and depression.

At the hearing, Plaintiff testified that she had mental problems and could not focus and that her concentration difficulties were further exacerbated by her tiredness. She testified that her problems with depression and anxiety had been increasing and that she had one to two crying spells weekly. (AR 65-66). She had difficulty remembering things and relied on her teenage daughter for reminders.

*1.    Anxiety Disorder*

At step two of the sequential evaluation, the ALJ found that Plaintiff had a severe impairment of an anxiety disorder described as panic disorder with agoraphobia. (AR 27). In

general, a "severe impairment," such as Plaintiff's anxiety disorder with agoraphobia, means that the impairment "significantly limits [Plaintiff's] . . . mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). As for mental impairments specifically, an impairment is severe if it has more than a "minimal limitation on [the] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

At step three of the sequential evaluation, the ALJ found that Plaintiff had mild difficulties with social functioning. The ALJ noted that Plaintiff reported going to church, the store, and doctor appointments and that Plaintiff talked on the phone, got along with her boss well, and was never fired because of difficulties getting along with people. The ALJ described his finding of mild limitations in social functioning as consistent with the state agency psychological consultants. In the RFC, the ALJ found that Plaintiff is only able to understand, remember, and carry out simple instructions, is able to make judgments on simple work-related decisions, is able to respond to usual work situations and to changes in a routine work setting, and is able to interact appropriately with supervisors or co-workers in a routine setting.

Plaintiff argues that the ALJ erred by failing to incorporate in the mental RFC any limitations to accommodate her anxiety disorder described as a panic disorder with agoraphobia and by failing to proffer any corresponding restrictions to the vocational expert. The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1545(e)(2), 416.927(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process.

SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996). The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim." *Id.*

The ALJ erred by failing to explain how the mental limitations in the RFC address Plaintiff's anxiety disorder. In the RFC determination, the ALJ notes that Plaintiff suffers from depression and an anxiety-related disorder described as panic disorder with agoraphobia. The ALJ then rejected Dr. Spotwood's opinion that Plaintiff's mental impairments, pain, and medication side effects would cause Plaintiff not to be able to focus for at least seven hours out of an eight-hour work day more than three days per month. The ALJ gave "little" weight to this specific opinion of Dr. Spotwood, Plaintiff's treating physician, because the record as a whole failed to indicate any psychiatric therapy, psychotherapy, or adjustment to psychotropic medications in an attempt to control her

condition. The ALJ also found that the longitudinal treatment records do not indicate any impairment that would cause such restrictive functioning.

The ALJ then noted that Dr. Parks also diagnosed Plaintiff with dysthymic disorder and panic disorder with agoraphobia, giving his opinion "some" weight because the record indicates that Plaintiff has moderate limitations in concentration, persistence, and pace, because of the combination of her mental impairments and the side effects of her pain medication, and because the diagnoses was made in a clinical setting. The ALJ gave great weight to the consultative reviewers who found that Plaintiff had mild limitations in activities of daily living, mild limitations in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace. The ALJ found this opinion consistent with the record as a whole, Dr. Spotwood's initial diagnosis, and Dr. Park's opinion and noted that the opinion accounted for the side effects caused by Plaintiff's pain medication.

Nevertheless, the ALJ's RFC determination does not discuss whether there are any functional limitations resulting from Plaintiff's anxiety disorder nor does the ALJ offer any rationale as to why the mental limitations in the RFC accommodate Plaintiff's panic disorder with agoraphobia or why different limitations are not required. The Commissioner is correct that the ALJ discussed Plaintiff's mental impairments, but the Commissioner fails to acknowledge that the ALJ did not discuss how the limitations in the RFC address this specific mental impairment. This is a failure by the ALJ to build a logical bridge.

Although the ALJ notes that Plaintiff goes grocery shopping and attends church, the ALJ does not acknowledge that Plaintiff reported in her October 16, 2010 adult function report that she does so only a few times a month. (AR 196-97, 230). The Commissioner contends that Plaintiff was

11

nevertheless able to perform these activities despite her anxiety and agoraphobia. First, the ALJ did not offer this reasoning, and the Commissioner may not offer a rationale not given by the ALJ. Second, it is not apparent that the ability to surmount a panic disorder with agoraphobia a few times a month translates into the ability to sustain full time work. Talking on the phone and getting along with a previous boss also do not explain how the limitations in the RFC address Plaintiff's anxiety disorder. Social functioning abilities and limitations do not necessarily equate with limitations attributable to panic disorder with agoraphobia.

The Commissioner also contends that no record physician assigned any particular limitations with respect to Plaintiff's anxiety disorder. While the ALJ notes that the record did not support the extreme limitations proposed by Dr. Spotwood, the ALJ did not rely on the lack of limitations assigned by a record physician as a basis for explaining how the limitations in the RFC address the anxiety disorder.

The Commissioner also points to Dr. Kladder's opinion that "[w]hile [Plaintiff] does have some limitation to concentration, it is expected that she would be able to handle the stresses involved in simple unskilled work in the workplace." (Def. Br., p. 5 (citing (AR 618))). The Commissioner reasons that the ALJ's RFC assessment is consistent with this finding by Dr. Kladder. The problem, however, is that the ALJ neither discussed nor relied on this finding in his decision.

The ALJ's failure to explain whether he translated a finding of severity at step two into functional limitations in the RFC requires remand. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *see also Collins v. Astrue*, 2011 WL 6318720, 10 CV 8067, at *9-10 (N.D. Ill. Dec. 16, 2011) (finding that the ALJ failed to properly consider evidence of a panic disorder with agoraphobia).

*2.     Limitations in Concentration, Persistence, or Pace*

The ALJ found that Plaintiff had a moderate limitation in concentration, persistence, or pace. As noted above, the ALJ limited Plaintiff to "simple work" in the RFC. Plaintiff argues that the ALJ failed to set forth an assessment of Plaintiff's work restrictions due to the moderate limitation and that the limitation to "simple work" does not cure that failure.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner*, 627 F.3d at 620-21 ("Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical.")). This includes any deficiencies of concentration, persistence, or pace. *Id.* (citing *O'Connor-Spinner*, 627 F.3d at 619; *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases)). An individual with moderate difficulties in concentration, persistence, or pace may have additional limits in performing even simple tasks. *O'Connor-Spinner*, 627 F.3d at 620-21. Like in *O'Connor-Spinner*, it is not clear that Plaintiff's concentration difficulties would be accommodated by a limitation to performing simple tasks. As set forth above, Dr. Parks noted several instances in which Plaintiff had difficulty with recall, simple calculations, and understanding basic directions. And, the ALJ recognized in the decision that Dr. Parks concluded that Plaintiff had poor concentration, giving it some weight because the record indicates that Plaintiff has moderate limitations in maintaining concentration, persistence, or pace. The ALJ further gave "great" weight to the reviewing examiners, who also found moderate limitations in concentration, persistence, or pace. However, the ALJ did not discuss reviewing examiner Dr. Kladder's opinion on the Mental Residual Functional Capacity Assessment

13

form that Plaintiff was moderately limited in the "ability to maintain attention and *concentration for extended periods*" and in the "ability to carry out detailed instructions." (AR 616) (emphasis added).

Nevertheless, the ALJ offers no explanation of why a limitation to simple tasks accounts for Plaintiff's specific and personal difficulties with concentration, persistence, or pace that are based on Plaintiff's poor concentration on basic tasks. This failure might have been harmless if the ALJ had directly asked the vocational expert whether the cited jobs would still be available if Plaintiff had poor concentration. *See Kasarky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers."). But, the ALJ did not do so. Nor did the hypotheticals otherwise reflect Plaintiff's limitations in concentration, persistence, or pace.

The Commissioner argues that the limitation to simple tasks was appropriate because Dr. Kladder, the state agency reviewing physician, found that Plaintiff had moderate limitations in concentration, persistence, or pace and translated that finding into an RFC opinion that Plaintiff could perform unskilled work. First, the ALJ did not cite or acknowledge Dr. Kladder's RFC opinion for unskilled work and, thus, did not "adopt" Dr. Kladder's RFC opinion as suggested by the Commissioner. Thus, it cannot be the basis for affirming the ALJ's decision.[1] Second, the translation by a reviewing physician of a moderate limitation in concentration, persistence, or pace into a mental RFC for "unskilled work," without explanation of how the unskilled work would exclude positions likely to trigger the claimant's specific limitations, does not go far enough to capture the claimant's limitations. *Yurt*, 758 F.3d at 858 (distinguishing *Johansen v. Barnhart*, 314

---

[1] For this reason, the Court need not address the Commissioner's citation to the Social Security Administration's Program Operations Manual System.

F.3d 283 (7th Cir. 2002)). The court in *Yurt* reemphasized the holding in *O'Connor-Spinner* that the hypothetical must reflect the moderate limitations and that the court has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Id.* at 858-59. Neither Dr. Kladder nor the ALJ explained how the unskilled work limitation eliminated jobs that would be incompatible with Plaintiff's concentration difficulties.

Because a limitation to simple work does not necessarily exclude from the vocational expert's consideration positions that present problems of concentration, persistence, and pace and because the ALJ did not incorporate moderate limitations in concentration, persistence, and pace in a hypothetical to the vocational expert, reversal is required. On remand, the ALJ is instructed to identify the limitations in the RFC that account for Plaintiff's moderate limitations in concentration, persistence, and pace and explain why they are sufficient.

### B. Weight to the Treating Physician

An ALJ must give the medical opinion of a treating doctor controlling weight as long as the

> treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons . . . for the weight we give to your treating source's opinion.

20 C.F.R. § 416.927(c)(2); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); SSR 96-8p; SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996). In other words, the ALJ must give a

15

treating physician's opinion controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf*, 602 F.3d at 875.

The factors listed in paragraphs (c)(2)(i) through (c)(6) are the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors such as the familiarity of a medical source with the case. 20 C.F.R. § 416.927(c). "[I]f the treating source's opinion passes muster under [§ 404.1527(c)(2)], then there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it." *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (internal quotation marks omitted) (quoting *Hofslien*, 439 F.3d at 376). An ALJ is entitled to discount the medical opinion of a treating physician if it is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as the ALJ gives good reasons. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Schaaf*, 602 F.3d at 875; *Skarbek*, 390 F.3d at 503.

Dr. Spotwood opined, among other things, that Plaintiff needed to lie down more than once per workday, would miss more than three days of work per month, and that more than four days per month, she could not maintain focus to complete complex types of tasks for at least seven hours of an eight-hour workday. The ALJ explicitly found these three opinions to be unsupported by and inconsistent with the record evidence and gave "little" weight to these aspects of Dr. Spotwood's opinion. (AR 32-33). (The ALJ otherwise gave "some" weight to Dr. Spotwood's opinion to the extent it was consistent with the RFC.) The ALJ's explanation for giving "little weight" to the three opinions is that he did "not find medical evidence in the record that indicates that the claimant would

16

have the degree of absenteeism, the frequency for the need to lie down, or the level of concentration impairment opined by Dr. Spotwood."

Plaintiff argues that the ALJ did not give good reasons for rejecting these three aspects of Dr. Spotwood's opinion and that the ALJ's finding was cursory. Because the Court is remanding on other grounds, the ALJ is directed on remand to discuss the record evidence to show why Dr. Spotwood's opinions regarding absenteeism, the need to lie down, and extended concentration were inconsistent with the record. *See Roddy*, 705 F.3d at 638 ("The ALJ should have, but did not, explain why Dr. Wright's opinion about the severity of Roddy's pain is inconsistent with such findings.") (citing *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004)). Specifically, the ALJ shall discuss Dr. Parks' examination notes regarding Plaintiff's concentration, the impact of Plaintiff's obesity on her back and lower extremity pain and her sleep apnea, and, as to absenteeism, the combination of the severe impairments found by the ALJ.

In addition, the ALJ gave "significant weight" to Robert E. Hall, DC, a treating chiropractor. However, a chiropractor is not an acceptable medical source, Dr. Hall proffered inconsistent opinions about the ability to perform light work without explanation, and Dr. Hall did not set forth supporting medical findings. (AR 593, 596, 662). On remand, the ALJ is directed to reweigh the opinion of the treating chiropractor in light of the regulations, the inconsistencies in his opinions, and the absence of supporting medical findings.

### C. Physical RFC Determination

As set forth above, the RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young*, 362 F.3d at 1000; 20 C.F.R. §§ 404.1645(a), 416.945(a).

17

Plaintiff argues that the ALJ erred in the physical RFC by failing to properly assess Plaintiff's carpal tunnel syndrome, her ability to stoop, and her need to elevate her legs.

*1.      Right Hand Restrictions*

On November 23, 2010, Dr. Smejkal conducted a consultative physical examination of Plaintiff. Dr. Smejkal found full range of motion in all upper extremities, normal pulses, strength of 5/5 in all major muscle groups, no erythema, warmth, or swelling bilaterally in the hands, and no heberden nodes. Dynanometer testing generated 10 kilograms of force in both hands. (AR 599-601).

On November 12, 2011, Plaintiff went to the emergency room with complaints of right wrist pain that had started a day earlier. (AR 31, 810-27). An attending emergency room physician noted that Plaintiff reported no history of carpal tunnel syndrome and had no prior complaints. The doctor observed that Plaintiff had slight swelling in her fingers and tenderness to the touch. He diagnosed Plaintiff with probable right carpal tunnel syndrome and placed her arm in a sling for comfort and a dynamic wrist splint.

In analyzing the record evidence, the ALJ listed both Dr. Smejkal's findings in 2010 as well as Plaintiff's treatment for carpal tunnel syndrome a year later. However, the ALJ did not discuss these records in the context of assigning Plaintiff an RFC for frequent (up to 2/3 of a workday) fingering and handling with her right hand. The ALJ did not explain why he found Plaintiff able to use her right hand frequently as opposed to only occasionally (up to 1/3 of a workday). Plaintiff testified that she has hand difficulties that include swelling, difficulty holding items, problems with manipulation, and finger cramping. (AR 62-63, 79). On remand, the ALJ is directed to articulate the basis for finding that Plaintiff can use her right hand frequently in light of her diagnosis of carpal tunnel syndrom in November 2011 and her testimony. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d

345, 352 (7th Cir. 2005) (reversing because the ALJ did not explain how he arrived at the assigned physical residual functional capacity).

2. *Stooping*

"An ability to stoop occasionally, i.e. from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base . . . , but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." SSR 96-9p, 1996 WL 374185, at *8 (July 2, 1996). Stooping involves "bending the body downward and forward by bending the spine at the waist." *See* SSR 83-14, 1983 WL 31254, at *2 (1983). At the consultative examination, Dr. Smejkal observed that Plaintiff could bend only to 45 degrees. (AR 599-601).

Plaintiff argues that the ALJ erred by failing to explain how Plaintiff could occasionally stoop given that she can only bend to forty-five degrees. *See Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (finding that the ALJ failed to assess an inconsistency between an assessment that the claimant had only 50 degrees of flexion in her lower back and a finding that the claimant could stoop occasionally). In response, the Commissioner argues that the error is harmless because none of the jobs identified by the vocational expert require stooping. Plaintiff abandons this argument in her reply brief. Nevertheless, because the Court is remanding on other grounds, the ALJ is instructed to consider Dr. Smejkal's finding that Plaintiff can only bend to forty-five degrees, to discuss the impact of that finding on Plaintiff's ability to stoop, and to incorporate Plaintiff's ability to stoop into the RFC and the hypotheticals posed to the vocational expert.

*3.     Elevating Legs*

Plaintiff argues that there is sufficient evidence in the record of a need to elevate her legs, including Dr. Spotwood's opinion that Plaintiff needs to elevate her feet ten minutes of every hour. At the hearing, Plaintiff testified that her feet swell and that she needs to elevate her feet to relieve the swelling. She testified that she lays back in the recliner to elevate her feet. (AR 69-71). The vocational expert testified that a claimant who needs to elevate her feet above her heart would be precluded from performing the identified jobs. Dr. Spotwood did not specify that level at which Plaintiff needed to elevate her feet. The Commissioner argues that the record contains little mention of Plaintiff having swollen feet or legs and no treatment notes mention that Plaintiff should elevate her legs. Nevertheless, the ALJ completely ignored Dr. Spotwood's opinion and Plaintiff's testimony regarding the need to elevate her legs. On remand, the ALJ shall consider and discuss this limitation imposed by Dr. Spotwood in light of Plaintiff's testimony, Plaintiff's morbid obesity, and the evidence of record.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 29th day of October, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record